UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY J. SIMPKINS,       Civil Action No.: 20-10673
                            Honorable Robert H. Cleland
          Plaintiff,     Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 15]

Plaintiff Anthony J. Simpkins appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Simpkins' motion [ECF No. 12] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42

  U.S.C. § 405(g).

I.   **BACKGROUND**

   **A. Procedural and Factual Background**

In March 2012, Simpkins applied for DIB and alleged an onset date (AOD) of May 2003, when he was 35 years old.  ECF No. 10-5, PageID.190.  He claimed disability from diabetes, lower back and hip damage, bone spurs, right eye blindness, poor depth perception, left shoulder rotator cuff, right shoulder nerve damage, neuropathy in feet, arthritis, and injury to artery by bladder.  ECF No. 10-3, PageID.113.

After the initial denial of the claim, an administrative hearing was held in November 2013 before an administrative law judge (ALJ).  ECF No. 10-9, PageID.583.  In a February 2014 decision, that ALJ found Simpkins not disabled before his date last insured (DLI), December 31, 2008.  *Id*.  The Appeals Council denied review, and Simpkins sought judicial review in July 2015.  *Id.*

United States Magistrate Judge R. Steven Whalen remanded the case for further proceedings, finding that the ALJ had erred by failing to identify or discuss Simpkins' obesity in either the credibility analysis or in

2

composing the RFC.  ECF No. 10-9, PageID.600-602.[1]  Judge Whalen also

concluded the ALJ wrongly assessed an RFC for light work without

addressing evidence that Simpkins walking, standing, and manipulative

limitations would preclude work at that exertion level.  *Id.*

A different ALJ held a hearing in April 2018.  ECF No. 10-8,

PageID.517-556.  In her January 2019 decision, the second ALJ found that

Simpkins was not disabled before his DLI.  *Id.*, PageID.488.  The Appeals

Council denied review, and Simpkins again filed for judicial review.  *Id.*,

PageID.465-468; ECF No. 1.

### B.  The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

---

[1] This opinion is also found at *Simpkins v. Comm'r of Soc. Sec.*, 15-12731, 2017 WL 2454081 (E.D. Mich. May 18, 2017), *adopted*, 2017 WL 2438782 (E.D. Mich. June 6, 2017).

gainful activity," he or she will be found not disabled. 20 C.F.R.

§ 404.1520(a)(4). Second, if the claimant has not had a severe impairment

or a combination of such impairments[2] for a continuous period of at least

12 months, no disability will be found. *Id.* Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.* If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity, and will find the

claimant not disabled if he or she can still do past relevant work. *Id.* At the

final step, the Commissioner reviews the claimant's RFC, age, education,

and work experiences, and determines whether the claimant could adjust to

other work. *Id.* The claimant bears the burden of proof throughout the first

four steps, but the burden shifts to the Commissioner if the fifth step is

reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Applying this framework, the ALJ concluded that Simpkins was not

disabled. At the first step, she found that Simpkins had not engaged in

substantial gainful activity between his AOD, May 10, 2003, and his DLI,

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

December 31, 2008.  ECF No. 10-8, PageID.477.  At the second step, the

ALJ found that Simpkins had the severe impairments of degenerative disc

disease of the cervical and lumbar spine; degenerative joint disease of the

bilateral shoulders; diabetes mellitus with retinopathy; and right eye

blindness, status post vitrectomy.  *Id*.  The ALJ determined that Simpkins's

hyperlipidemia and hypertension were non-severe impairments.  *Id*.,

PageID.478.  She also considered his obesity in relation to his medically

determinable impairments as required by Social Security Ruling 02-1p.  *Id.*

Next, the ALJ concluded that none of her impairments, either alone or in

combination, met or medically equaled the severity of a listed impairment.

*Id.*, PageID.478-479.

Between the third and fourth steps, the ALJ found that Simpkins had

the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a),

except that he could:

> stand/walk a total of four hours in an eight-hour workday;
> occasional climbing of ramps/stairs; occasional stooping,
> kneeling, crouching, and crawling; no climbing ladders, ropes,
> or scaffolds; no overhead reaching bilaterally; no exposure to
> concentrated fumes, odors, dust, gases, and poor ventilation;
> limited exposure to depth perception and no exposure to
> workplace hazards such as dangerous machinery and
> unprotected heights.

*Id.*, PageID.479.  At the fourth step, the ALJ concluded that Simpkins could

not perform his past relevant work as a fabricator or stock parts fabricator.

*Id.,* PageID.486-487.  At the final step, after considering Simpkins's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that there were other jobs in significant numbers that he could perform, including positions as general office clerk, receptionist/information clerk, and production work helper.  *Id.*, PageID.488.

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Simpkins argues that the ALJ did not properly evaluate his obesity under the applicable Social Security ruling and that the RFC was not

supported by substantial evidence.  [ECF No. 12, PageID.1013-1020].

Simpkins also contends the ALJ committed reversible error by not finding

his loss of vision equal to the criteria of the relevant listing.  The Court

disagrees and recommends that the decision be affirmed.

**B.**

Simpkins argues that the ALJ again failed to adequately analyze and

account for his obesity under Social Security Rule 02-1p.  *See* SSR 02-1p,

2002 WL 34686281, at *3 (Sept. 12, 2002).  The Court finds no reversible

error.

Under SSR 02-1p, an ALJ must consider obesity at steps two through

five of the sequential evaluation process used to determine whether an

individual is disabled.  SSR 02–1p.  The ALJ must "consider the claimant's

obesity, in combination with other impairments, at all stages of the

sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574,

577 (6th Cir. 2009).  The ruling does not require a rigid mode of analysis,

but "provides that obesity, in combination with other impairments, may

increase the severity of the other limitations." *Coldiron v. Comm'r of Soc.

Sec.,* 391 F. App'x 435, 443 (6th Cir. 2010) (citation and quotation marks

omitted).

An ALJ's mere mention of obesity in passing is not enough; remand is warranted when an ALJ offers scant explanation about how a plaintiff's established obesity affects his ability to work and function.  *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015).  But an ALJ's duty to discuss obesity diminishes when the record shows that treating and examining sources did not consider obesity a significant factor in the claimant's RFC.  *See Balknight v. Comm'r of Soc. Sec.*, 2019 WL 4011881, at *25 (E.D. Mich. July 31, 2019).  Indeed, the mere acknowledgment of a plaintiff's obesity will suffice when the plaintiff fails to list obesity on his application and there is scant evidence of obesity in the record.  *Nejat*, 359 F. App'x at 577; *Cranfield v. Comm'r of Soc. Sec.,* 79 F. App'x 852, 857-858 (6th Cir. 2003).  Citing *Nejat*, the court in *Hollingsworth v. Astrue* rejected the plaintiff's claim that the ALJ erred by not mentioning her obesity.  2010 WL 2901830, at *5 (M.D. Tenn. July 15, 2010).  The court reasoned that the plaintiff had not listed obesity as an impairment in her disability application and that the record lacked evidence that she was diagnosed with clinical obesity that impaired her RFC.  *Id*.

The ALJ here addressed Simpkins' obesity in a single sentence: "Obesity is no longer a listed impairment in 20 CFR Part 404, Subpart B, Appendix 1: however, [Simpkins'] obesity was considered in relation to his

medically determinable impairments as required by Social Security Ruling 02-1p."  ECF No. 10-8, PageID.478.  This perfunctory dispatch of the obesity issue was not error because Simpkins did not claim obesity as an impairment on his application, and, more critically, his medical records from the relevant period never mention obesity or excessive weight.   ECF No. 10-7.

Weights recorded for Simpkins before his DLI ranged from 190 to 214 pounds.  ECF No. 10-7, PageID.367-392.  Simpkins' medical records do not reflect a BMI, but based on his stated height of 5'7", his recorded weights suggest a BMI just below or over the threshold for obesity.[3]  Even so, the word "obesity" does not appear in his medical records, and no medical source even mentions the subject of Simpkins' weight except in a September 2005 notation that he had been able to lose some weight.  ECF No. 10-7, PageID.425.

The dearth of evidence that obesity impaired Simpkins' functional limitations justifies the lack of further elaboration by the ALJ on the obesity issue.  *Nejat*, 359 F. App'x at 577; *Cranfield,* 79 F. App'x at 857-858;

---

[3] According to Centers for Disease Control and Prevention Adult BMI calculator, Simpkins' BMI ranged from 29.8 to 33.5 between his AOD and his DLI.  Obesity is defined as a BMI over 30.  *See* www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculat or/bmi_calculator.html, last viewed March 25, 2021.

*Hollingsworth*, 2010 WL 2901830, at *5.  SSR 02-1p "does nothing to

relieve [the plaintiff] of the burden of marshalling competent medical

opinion and evidence to show *specifically* how [his] obesity exacerbated

[his] other impairments, or interacted with them, to render [his] incapable of

all suitable work."  *Smith v. Astrue*, 639 F. Supp. 2d 836, 846 (W.D. Mich.

2009).  Simpkins asserts that the ALJ should have ordered a test to

determine the effect of his obesity on his breathing problems, but the ALJ

had no duty to adduce evidence to address whether Simkins' obesity

caused functional limitations.  Instead, Simpkins bears the burden of

showing how his obesity, combined with other impairments, limited his

ability beyond the ALJ's RFC.  *Spence v. Comm'r of Soc. Sec.*, 2020 WL

1818041, at *3 (E.D. Mich. Jan. 23, 2020).  Simpkins does not sustain this

burden; he cites no medical evidence connecting his obesity to specific

functional limitations.

Simpkins did testify at the 2018 hearing that his obesity caused him

increased fatigue, shortness of breath, difficulty sleeping, elevated blood

pressure, and increased back pain.  ECF No. 10-8, PageID.530-533.  But

the ALJ did not have to accept these subjective claims, and the Court must

give her credibility findings great deference.  *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 476 (6th Cir. 2003).  And Simpkins' generalized complaints

10

relating to his obesity did not support functional limitations at odds with those provided by the RFC.  *See Spence*, 2020 WL 1818041, at *5.

For these reasons, the Court believes the ALJ adequately considered Simpkins' obesity and does not recommend remand.

## C.

Simpkins also alleges that the ALJ erred by finding that he could perform a range of sedentary jobs without considering all the relevant evidence, particularly that he could not perform sustained work for eight hours a day, five days a week.  ECF No. 12, PageID.1016-1020; ECF No. 16, PageID.1062-1063.  Simpkins contends that the record lacks proof that he can sustain activities for any extended period.  This argument misses the mark because Simpkins has the burden of proof through the first four steps of the sequential analysis.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (the claimant retains the burden of proving lack of residual functional capacity).  Thus, Simpkins must cite evidence that he cannot sustain activities for a full workday and week.

The evidence Simpkins relies on includes a letter from his former employer saying that he was terminated for absenteeism related to his diabetes symptoms.  *See* ECF No. 10-6, PageID.284; ECF No. 12, PageID.1017.  Even if the ALJ erred in not discussing this letter in her

11

written decision, that error was harmless.  *Lohr v. Comm'r of Soc. Sec.,* 559 F. Supp. 2d 784, 793 (E.D. Mich. 2008) (court will remand a case to the agency only if it is in substantial doubt that the agency would have made the same ultimate finding without the error).

The letter from Simpkins' former supervisor says that he was terminated for absenteeism as a result of issues with unstable blood sugar. ECF No. 10-6, PageID. 284.  But the letter describes these issues as occurring before Simpkins' AOD, from 1999 to 2002.  An ALJ need consider evidence before the AOD only if the claimant shows that it is relevant to the period at issue.  *See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) (evidence of medical conditions suffered outside relevant temporal window does not support impairment during that period); *Coleman v. Comm'r of Soc. Sec*., No. 12-CV-10809, 2013 WL 1316953, at *3 (E.D. Mich. Mar. 29, 2013) ("In considering medical records prior to a claimant's alleged onset date, an ALJ must consider the records to the extent they are relevant to the claim for disability benefits."). Simpkins does not show that the letter is relevant to a medical condition that impaired him during the relevant period; he cites no medical evidence of blood sugar instability during the period between his AOD and DLI.  And as the ALJ noted, the record does not show that Simpkins suffered from

"diabetic ketoacidosis, or significant drops or heights in blood sugar levels such as hypo or hyperglycemia."  ECF No. 10-8, PageID.485.

Simpkins also cites records about his visual impairments that postdated his 2008 DLI.  ECF No. 10-7, PageID.340-341, 462-463; ECF No. 10-13, PageID.844, 991-995.  He does not show that those records support his claim of disability during the relevant period.  *Grisier v. Comm'r of Soc. Sec*., 721 F. App'x 473, 477 (6th Cir. 2018) (evidence of disability after DLI is of little probative value unless it illuminates the plaintiff's health before the expiration of insured status).

For these reasons, Simpkins' argument that the ALJ overlooked relevant evidence lacks merit.

**D.**

Finally, Simpkins' contends that the ALJ erred in finding that his vision loss did not equal Listing 2.04.  "A claimant must satisfy all of the criteria to meet the listing."  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3).  An impairment is medically equivalent to a listing if "it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 1526(a).  "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is

13

equivalent in severity to the medical findings for any Listed Impairment."
*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).

To support his argument that the ALJ committed reversible error by failing to properly analyze Listing 2.04, Simkins "must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing." *Smith–Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. 2014)*.* "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

To meet Listing 2.04, the claimant must have "[a] visual efficiency percentage of 20 or less after best correction" or "[a] visual impairment value of 1.00 or greater after best correction."  20 C.F.R. pt. 404, subpt. P, app. 1, § 2.04.  The ALJ found the record did not show that Simpkins met or equaled the components of Listing 2.04 before his DLI.  ECF No. 10-8, PageID.478, 482.  This finding is supported by substantial evidence.

A few weeks after Simpkins' DLI, his treating ophthalmologist, Charles Dabb, M.D., noted that he had 20/25-2 visual acuity in his left eye and was "doing well."  ECF No. 10-7, PageID.376.  Consulting ophthalmologist, Ayo-Lynn Fifield, M.D., who examined Simpkins in 2018, nearly 10 years after his DLI, assessed his visual acuity at 20/40 and his

14

horizontal visual field as 90 degrees.  ECF No. 10-13, PageID.993.

Simpkins tacitly acknowledges that these test results do not approximate

the severity of impairment set forth in the listings, but he emphasizes that

Dr. Fifield believed his vision prognosis to be poor.  ECF No. 16,

PageID.1062.  A prognosis is a future prediction, not a present

assessment.  And a prediction made ten years after the DLI that Simpkins

might meet or equal the severity of a listing still further in the future cannot

provide substantial evidence that he met it in 2008.  *Grisier,* 721 F. App'x at

477.

Simpkins also argues that his vision impairment equals Listing 2.04

due to the intermittent visual hallucinations from Charles Bonnet Syndrome,

a neurological condition which develops after significant vision loss.  ECF

No. 12, PageID.1006.  But as noted by the Commissioner, Simpkins'

medical records do not mention Charles Bonnet Syndrome until 2014,

nearly six years after his DLI.  ECF No. 10-7, PageID.463.  Thus, even if

Simpkins' visual hallucinations equaled the severity of a listing, he offers no

evidence that they did so as of his DLI.  *See Grisier*, 721 F. App'x at 477.

Substantial evidence supports the ALJ's findings that Simpkins did not

meet of equal Listing 2.04 as of his DLI.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Simpkins's motion for summary judgment be, ECF No. 12, be **DENIED**; that

the Commissioner's motion, ECF No. 15, be **GRANTED**; and that the ALJ's

decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: April 8, 2021                    United States Magistrate Judge


### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991)*.

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 8, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
