# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

ANTHONY J. SIMPKINS,

    Plaintiff,

v.                                             Case No. 20-10673

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

_____/

## OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Anthony J. Simpkins brings this action under 42 U.S.C. §§ 405(g) challenging Defendant Commissioner of Social Security's decision to deny Plaintiff Disability Insurance Benefits ("DIB") under the Social Security Act. (ECF No. 1.) The case was referred to Magistrate Judge Elizabeth A. Stafford on March 13, 2020. (ECF No. 3.) Plaintiff and Defendant have now filed cross-motions for summary judgment. (ECF Nos. 12, 15.) The Magistrate Judge recommended on April 8, 2021, that the court deny Plaintiff's motion and grant Defendant's motion. (ECF No. 17.)

On April 22, 2021, Plaintiff filed two objections to the Report and Recommendation ("R&R"). (ECF No. 18.) Defendant timely filed a response. (ECF No. 19.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will overrule Plaintiff's objections and adopt the R&R.

**I. BACKGROUND**

Plaintiff applied for disability insurance benefits in March 2012 with an alleged onset date of May 2003 and a date last insured ("DLI") in December 2008. (ECF No. 10-3, PageID.113.) Plaintiff claimed disability due to diabetes, lower back and hip damage, bone spurs, right eye blindness, poor depth perception, left shoulder rotator cuff, right shoulder nerve damage, neuropathy in feet, arthritis, and injury to an artery by bladder. (*Id.*) Upon initial denial of the claim, Plaintiff challenged Defendant's decision at a hearing before administrative law judge ("ALJ"). (ECF No. 10-9, PageID.583.) The ALJ's 2014 opinion found Plaintiff was not disabled at any time before his DLI. (*Id.*) When Plaintiff sought judicial review in 2015, the court remanded the claim to the ALJ because the court found that the ALJ had failed to properly consider Plaintiff's obesity in either its credibility analysis or it's residual functional capacity ("RFC") determination, and the court also found that the ALJ had improperly assessed Plaintiff's ability to engage in light work. *See Simpkins v. Comm'r of Soc. Sec.*, 15-12731, 2017 WL 2454081 (E.D. Mich. May 18, 2017), *adopted*, 2017 WL 2438782 (E.D. Mich. June 6, 2017) (Cox. J.).

Following remand, in April 2018, a new hearing was held by a different ALJ, Carrie Kerber. (*See* ECF No. 10-8.) While ALJ Kerber found that Plaintiff had not worked since the alleged onset of his disability (step-one), that he suffered from a severe impairment (step-two), and that he could not return to his past relevant work as a fabricator (step-four), she also held that Plaintiff's impairments did not meet or exceed the severity of the impairments listed in 20 CFR Part 404, Subpart P, required to establish functional limitations (step-three). (*Id.*, PageID.477-79.)

She also found that Plaintiff retained the residual functional capacity to perform sedentary work, albeit with some limitations. (*Id.*)

> [T]hrough the last date insured, the [Plaintiff] had the residual factional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: stand/walk a total of four hours in an eight-hour workday; occasional climbing of ramps/stairs; occasional stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no overhead reaching bilaterally; no exposure to concentrated fumes, odors, dust, gases, and poor ventilation; limited exposure to depth perception and no exposure to workplace hazards such as dangerous machinery and unprotected heights.

(*Id.*, PageID.479.) After considering Plaintiff's education, work experience, and residual functional capacity, along with the testimony of a vocational expert at the hearing, the ALJ concluded at step five that Plaintiff could work as a general office clerk, receptionist/information clerk, and production work helper (*Id.*, PageID.488.) Therefore, the ALJ concluded that Plaintiff was not disabled.

Plaintiff then filed the present action to appeal ALJ Kerber's determination. (ECF No. 1) Magistrate Judge Stafford issued a Report & Recommendation that would affirm the ALJ's decision and would find no reversible error (ECF No. 17). Plaintiff has now filed two objections (ECF No. 18).

## II. STANDARD

When a party files timely objections to an R&R, the court "make[s] a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–74 (1980). This process provides the court "the opportunity to consider the specific contentions of the parties," *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), and "enables the district judge to focus attention on those issues— factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S.

140, 147 (1985). After re-examining the evidence relevant to these objections, the court determines whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In considering whether a claimant is entitled to disability benefits, the Commissioner is to determine whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1520. The Plaintiff has the burden of proof as to steps 1-4, but as to step 5, the burden shifts to the Commissioner to show that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391-92 (6th Cir. 1999).

In the present case, Plaintiff objects to the R&R's report that ALJ Kerber properly evaluated Plaintiff's obesity when determining the severity of his impairment and that the ALJ properly concluded that Plaintiff retained sufficient residual capacity to engage in sedentary work. (ECF No. 18.) The court finds that both objections lack merit.

4

## A. First Objection

Plaintiff first contends that the ALJ again failed to "adequately analyze and account for plaintiff's obesity under Social Security Rule 02-1p" because the ALJ's opinion contains only "one line that appears to be dealing with obesity." (ECF No.18, PageID.1087.) The sentence directly addressing "obesity" in ALJ Kerber's decision stated that: "[o]besity is no longer a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1: however, [Plaintiff's] obesity was considered in relation to his medically determinable impairments as required by Social Security Ruling 02-1 p." (ECF No. 10-8, PageID.478.) Plaintiff now argues that the Magistrate Judge erred when concluding that ALJ Kerber's analysis was sufficient under Social Security Commission's standards, and that the Magistrate Judge improperly relied on "post-hoc" reasoning and analysis on regarding obesity that "were absent from the ALJ's decision." (*Id.*)

Defendant argues that even such a single line of analysis in the past has been found to "constitute[] adequate consideration of obesity where evidence of resulting limitations is lacking." (ECF No. 19, PageID.1095.) Furthermore, Defendant argues that ALJ Kerber in fact addressed Plaintiff's obesity "in more than a single sentence." (*Id.*)

> The ALJ stated that "obesity was considered in relation to . . . [Plaintiff's] medically determinable impairments as required by Social Security Ruling 02-1p." (ECF No. 10-8, PageID.478). She acknowledged Plaintiff's testimony that "extra weight causes fatigue, and he has some difficulty with sleep, but cannot afford testing for sleep apnea." (ECF No. 10-8, PageID.481). And she observed that Plaintiff attributed increased back pain to "weight gain." (ECF No. 10-8, PageID.481). . . But in making these observations, the ALJ notably found that Plaintiff's subjective reports were not entirely borne out by the record. (ECF No. 10-8, PageID.481, 486).

(*Id.*, PageID.1096 (modifications in original).) In making her suggested determination, the Magistrate Judge relied on *Coldiron v. Comm'r of Soc. Sec,* 391 F. App'x 435 (6th Cir. 2010). In *Coldiron* the Sixth Circuit held that considering obesity does not require a

5

rigid "mode of analysis" and found that the ALJ's discussion of a claimant's morbid obesity "multiple times" as a factor that "'may' increase the severity of the other limitations" was sufficient when combined with medical opinions that took obesity into account. *Id.* at 442-43.

Plaintiff, in his objection, now contends that the ALJ's consideration of obesity in the present case does not meet the standard established in *Coldiron*. But upon reviewing the record, the court disagrees with Plaintiff's assessment. Before Plaintiff's last date insured, it is undisputed that Plaintiff's medical records indicate recorded weights only at, or slightly above, a BMI of 30, the cutoff BMI for obesity.[1] In contrast to the claimant in *Coldiron*, who qualified as *morbidly* obese, Plaintiff barely met the definition of obese at some points, therefore, in the absence of any medical opinion directly linking Plaintiff's weight to increased disability, less analysis of obesity by the ALJ is required here. And as recounted by Defendant, ALJ Kerber *did* consider Plaintiff's weight at several points in her analysis despite any evidence, outside of Plaintiff's own testimony, linking weight to a significantly reduced residual capacity. (*See* ECF No. 10-8, PageID.478, 481, 486.)

In any event, a modicum of common sense is required here. In contrast to the 2012 ALJ opinion involving Plaintiff—which found that Plaintiff retained the residual capacity to engage in light work that required up to six hours of standing each day despite a doctor opining that Plaintiff could stand for four hours at most, *Simpkins*, 2017 WL 2454081, at *9—ALJ Kerber in her present decision found that Plaintiff retained only

---

[1] Obesity is defined as a BMI over 30. *See BMI Calculator*, CDC https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last viewed Aug. 20, 2021).

the residual capacity for sedentary work. (ECF No. 10-8, PageID.479). Absent medical evidence, it seems improbable that Plaintiff's low-grade level of obesity greatly affects his ability to engage in sedentary work, after all 42.4% of US adults today qualify as obese. *See Adult Obesity Facts*, CDC, https://www.cdc.gov/obesity/data/adult.html (last viewed Aug. 20, 2021). ALJ Kerber was well within the zone of discretion when she chose to discount Plaintiff's testimony that his obesity significantly enhanced his impairments. For all these reasons, the court will overrule this objection.

## B. Second Objection

Plaintiff next objects that the "ALJ erred by finding that Plaintiff could perform a range of sedentary jobs without considering all the relevant evidence," specifically, his visual impairments.[2] (ECF No. 18, PageID,1089.) It is undisputed that Plaintiff was blind in his right eye while still insured, but the Magistrate Judge found that ALJ Kerber was correct in determining that Plaintiff did not meet "Listing 2.04" because "[a] few weeks after Simpkins' DLI, his treating ophthalmologist, Charles Dabb, M.D., noted that he had 20/25-2 visual acuity in his left eye and was 'doing well.'" (ECF No. 17, PageID.1079 (citing ECF No. 10-7, PageID.376).) The Magistrate Judge noted that a poor prognosis is a "future prediction, not a present assessment" (*Id.*) The Magistrate also concluded that ALJ Kerber was correct when she found that Plaintiff's diagnosis with Charles Bonnet Syndrome[3] was insufficient to qualify as an impairment under Listing 2.04, while

---

[2] The court sees no need to consider an alleged error by the ALJ—regarding a letter submitted a former employer— that Plaintiff expressly concedes is "harmless." (*See* ECF No. 18, PageID.1089.)

[3] "Charles Bonnet syndrome (CBS) is a disease in which visual hallucinations occur as a result of vision loss. . . The hallucinations people with CBS experience can be described as simple or complex. Simple hallucinations include shapes and patterns, while complex include images of people, vehicles, animals, and plants. Hallucination episodes can

7

Plaintiff was still insured, because Plaintiff's "medical records do not mention Charles Bonnet Syndrome until 2014." (*Id.*, PageID.1080.)

Plaintiff now argues that the ALJ's holding—and the Magistrate's recommended approval—was improper because they failed to mention that Plaintiff first reported seeing "new flashing lights" in January 2007 while still insured—indicating that Charles Bonnet Syndrome was already present well before the January 2014 diagnosis. (ECF No. 18, PageID.1090 (citing ECF No. 10-7, PageID.382, 463.)) Defendant disputes whether the 2007 eye exam record in question actually indicates that Defendant was experiencing flashing lights, but regardless, the 2007 record expressly indicates that Plaintiff's vision in his left eye was 20/25-2 and "had not changed over the last year." (ECF No. 10-7, PageID.382.) Subsequent exam records, cited by both the ALJ and Magistrate Judge, also indicate that, as of the date last insured, Plaintiff's vision was "doing well" and that he still had a visual acuity of 20/25-2. (*See* ECF No. 10-7, PageID.376.) Even assuming that Charles Bonnet syndrome today poses a substantial impairment to Plaintiff's vision after his sight has further degenerated, the existence of some minor symptoms while still insured does not lead inevitably to the conclusion these occasional symptoms—flashes of light—eliminated Plaintiff's residual functional capacity at the time. No medical evidence in the record supports the contention that Plaintiff experienced any substantial effects of Charles Bonnet syndrome while still

---

range from a few seconds to hours and may recur over the course of several days to years." *Charles Bonnet syndrome*, National Institutes of Health, https://rarediseases.info.nih.gov/diseases/10343/charles-bonnet-syndrome (last viewed Aug. 20, 2021).

insured. The court concludes that the ALJ's finding was supported by substantial evidence, thus, the court will overrule Plaintiff's second objection.

## IV. CONCLUSION

For the reasons stated above, the court will overrule Plaintiff's objections and adopt the Magistrate Judge's well-reasoned R&R in full and without amendment. Accordingly,

IT IS ORDERED that Plaintiff's objections (ECF No. 18) are OVERRULED, and the Magistrate Judge's April 8, 2021 Report and Recommendation (ECF No. 17) is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 25, 2021
I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 25, 2021, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(810)292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-10673.SIMPKINS.ObjectionstoRR.AAB.RHC.docx